# <u>Exhibit A</u>

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF WESTCHESTER**
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _x

Arms Length, Inc.

                                    Plaintiff/Petitioner,

          -against-                                               Index No. 60870|18

Starz Power Productions, LLC

                                    Defendant/Respondent.
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _x

### NOTICE OF ELECTRONIC FILING

**You have received this Notice because:**

- The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts e-filing system, and
- You are a Defendant/Respondent (a party) in this case.
                     (CPLR § 2111, Uniform Rule § 202.5-bb)

**If you are represented by an attorney:** give this Notice to your attorney. (Attorneys: see "Information for Attorneys" pg. 2).

**If you are not represented by an attorney: you are not required to e-file. You may serve and file documents in paper form and you must be served with documents in paper form. However, as a party without an attorney, you may participate in e-filing.**

### Benefits of E-Filing

You can:

- serve and file your documents electronically
- view your case file on-line
- limit your number of trips to the courthouse
- pay any court fees on-line.

There are no additional fees to e-file, view, or print your case records.

To sign up for e-filing or for more information about how e-filing works, you may:

- visit: www.nycourts.gov/efile-unrepresented or
- go to the Help Center or Clerk's Office at the court where the case was filed. To find legal information to help you represent yourself visit www.nycourthelp.gov

## Information for Attorneys

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site https://iapps.courts.state.ny.us/nyscef/HomePage; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the operational knowledge to comply with e-filing requirements. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated: 07/17/201___

PETER B ACKERMAN
_____
Name

_____
Firm Name

222 Mamaroneck Avenue, Suite
_____
Address

White Plains, NY  10605
_____

914-686-1200
_____
Phone

Marcy@PeterAckermanlaw.com
_____
E-Mail

To:  *Starz Power Productions*

_____

_____

11/20/17

FILED: WESTCHESTER COUNTY CLERK 07/17/2018 02:05 PM   INDEX NO. 60870/2018
NYSCEF DOC. NO. 1                                      RECEIVED NYSCEF: 07/17/2018

PBA #12532

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF WESTCHESTER**

---

ARMS LENGTH, INC.,

Plaintiff,

**Summons**

against

STARZ POWER PRODUCTIONS, LLC,

Defendant.

---

*Plaintiff designates WESTCHESTER as the place of trial*
*Basis of Venue: Plaintiff*
*Plaintiff resides at:*      *446 Bedford Rd., Ste. 3*
                          *Pleasantville, NY 10570*

*To the above named Defendant*
       ***You are hereby summoned*** *to answer the complaint in this action and to*
*serve a copy of your answer, or, if the complaint is not served with this summons, to serve a*
*notice of appearance, on the Plaintiff's Attorney (s) within 20 days after the service of this*
*summons, exclusive of the day of service (or within 30 days after the service is complete if this*
*summons is not personally delivered to you within the State of New York); and in case of your*
*failure to appear or answer, judgment will be taken against you by default for the relief*
*demanded herein.*

Dated: July 17, 2018

Defendant's address:
       8900 Liberty Circle
       Englewood, CO 80112

/s/ Peter B Ackerman
Peter B. Ackerman, Esq.
Attorney(s) for Plaintiff
Office and Post Office Address
222 Mamaroneck Avenue, Suite 202
White Plains, New York, 10605
(914)686-1200

**Upon your failure to appear, judgment will be taken against you by default for the sum of**
**$81,750.00 together with interest from 01/17/17 and the costs of this action.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

------------------------------------------------------------------------X

ARMS LENGTH, INC.,

Index No. **60870|18**

                              Plaintiff,

**COMPLAINT**

         -against-

STARZ POWER PRODUCTIONS, LLC,

                           Defendant.

------------------------------------------------------------------------X

Plaintiff complaining of Defendant alleges:

1. At all times herein Plaintiff is a domestic corporation with offices in the County of Westchester, State of New York.

2. At all times herein Defendant was and remains a Delaware limited liability company with offices to conduct business in the State of New York and is authorized to conduct business in the State of New York.

### FIRST CAUSE OF ACTION

3. On or about September 10, 2014, Plaintiff and Defendant entered into a written agreement pursuant to which Plaintiff supplied and rented certain equipment to Defendant, see Ex. A.

4. Thereafter, and pursuant to said agreement, Defendant took possession of said rented equipment, including one "2001 mack tractor" ("the tractor"), see p. 5 of "Work Order", part of Ex. A hereto.

5. On or about December 2, 2014, while the said tractor was in the exclusive possession and control of Defendant and/or its employees/representatives/agents, the tractor was damaged in a vehicular accident.

6. Par. 2 (h) of the agreement provides in pertinent part as follows:

> **Repairs.** Lessee agrees to maintain the Equipment in good condition and repair during the term hereof, and the Equipment shall be returned to Lessor in such condition. ... Lessee shall pay the costs, on return of the Equipment in Lessor's premises, of any repair of the Equipment required because it was not maintained by Lessee as required above and rent shall continue until any such repair is complete.  Any damaged equipment remains on rental until payment for repair or replacement occurs.

7. The tractor was returned to Plaintiff in damaged condition on or about January 1, 2015.

8. Payment for the said damage to the tractor was received by Plaintiff on or about December 16, 2016.

9. The cost to rent the tractor under the said agreement was $750 per week.

10. Pursuant to the terms of the agreement, Defendant therefore owes Plaintiff the total of $83,250 in rental charges for the tractor.

11. Defendant has paid Plaintiff, or been credited, a total of $1500 of that sum.

12. By reason of the above, Plaintiff is owed a total of $81,750 from Defendant.

13. Plaintiff fully performed its obligations under that agreement.

14. Despite due demands of Defendant, said sum has not been paid.

15. By reason of the above Plaintiff demands judgment against Defendant in the sum of $81,750 , plus appropriate interest from January 17, 2017.

## SECOND CAUSE OF ACTION

16. Plaintiff repeats and realleges the allegations in paragraphs one through fifteen as though fully set forth herein.

17. Said written agreement required the Defendant to be responsible for any attorney's

fees associated with the action such as the one herein.

18. Based on the above, Defendant is indebted to the Plaintiff for reasonable attorney's fees in an amount to be awarded by the Court.


WHEREFORE, Plaintiff demands judgment against Defendant in the sum of $81,750.00 plus interest from January 17, 2017 and reasonable counsel fees, together with the costs and disbursements of this action and any other appropriate relief.


Dated: White Plains, NY 10605
July 17, 2018                                        /s/ Peter B. Ackerman
                                                    Peter B. Ackerman, Esq.
                                                    Attorney for Plaintiff
                                                    222 Mamaroneck Avenue, Ste. 202
                                                    White Plains, NY 10605
                                                    914 686 1200

# EXHIBIT A

## EQUIPMENT RENTAL AGREEMENT

**THIS EQUIPMENT RENTAL AGREEMENT** (here in the "Agreement) is made and entered into by and between Key Grip Gear Inc, a New York corporation, as Lessor and the Lessee who is named on the Work Order consisting of one or more pages (herein the "Work Order"), on which this Agreement is printed on the reverse side. Lessor and Lessee agree as follows:

1.    **Equipment, Rent, Inspection & Deposit**

**a. Equipment Rented, Rent and Term.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the equipment listed on the Work Order (hereinafter the "Equipment"), upon the terms and conditions in this Agreement. Lessee shall pay to Lessor, as rent for the Equipment, the amounts shown on the Work Order, commencing on the date shown on the Work Order immediately following the words "Rental Start" (herein the "Rental Start Date") and continuing until the Equipment is returned, whether by Lessee or picked up by Lessor, to Lessor's premises at the address shown on the Work Order from which it was leased (herein "lessor's premises"). Lessee agrees to return the Equipment on the date and at the time shown on the Work Order immediately following the words "Scheduled return" (herein the "Return Date"). If the Equipment is returned after 12:00 p.m. (noon), a full day's rent will be charged for that day, and a full day's rent shall be charged for each day thereafter that the Equipment is not returned by 12:00 p.m. The period commencing with the Rental Start Date and ending on the Return Date is sometimes hereinafter referred to as the term of this Agreement.

**b. Time of Payment.** Lessor acknowledges receipt from Lessee of payment in advance of rent, if any, shown on the Work Order. Lessee agrees to pay the balance of the rent due and all taxes, service and all other charges provided for herein, on the Return Date, or, if sooner, on the date the Equipment is returned to the premises of Lessor. However, if the Return Date is more than four weeks after the Rental Start Date, then Lessee shall pay rent for every four-week period following the Rental Start Date, immediately after the end of each such four-week period, until the Equipment is returned to Lessor's premises. Lessee shall pay interest on all delinquent rent and other charges herein at the highest rate permitted under New York law. All invoices are due upon receipt. There will be a three (3%) percent monthly charge for all unpaid receipts.

**c. Personal Guaranty.** In consideration for, and as an inducement to making and entering into this equipment rental agreement with Lessor, Lessee guarantees to Lessor, Lessor's successors and assigns, the full performance and observance of all the covenants, conditions and agreements therein provided to be performed and observed by Lessee including the obligation to pay each installment payable under this Equipment Rental Agreement when due, without requiring any notice of non-payment, non-performance or non-observance, or proof, or notice, or demand, whereby to charge Lessee therefore, all of which Lessee hereby expressly waives. The undersigned individually further covenants and agrees that this guaranty shall remain and continue in full force and effect as to any modification or extension of the Equipment Rental Agreement.

**d. Deposit.** Lessor acknowledges receipt from Lessee of a deposit, if any, in the amount shown on the Work Order. Lessor may use said deposit to cure the failure to pay rent and any other default of Lessee hereunder. Said deposit shall not bear interest and may be commingled with

the other fund of Lessor. Any unearned portion of said deposit shall be returned to Lessee within a reasonable time after the Equipment is returned to Lessor's premises. Lessee may not direct that any portion of said deposit be used for the payment of rent or other charges due from Lessee hereunder.

**2. Obligations of Lessee Regarding Equipment.**

**a. Inspection and Determination of Fitness.** Lessee agrees that it will inspect the Equipment before using it and will not use it unless Lessee finds that the Equipment is fit for Lessee's purpose and is in good condition. If requested to do so in writing by Lessee, Lessor shall replace or repair any piece of Equipment that Lessor agrees was not in good condition at the time of such inspection.

**b. Knowledge of Equipment Required.** If Lessee is not knowledgeable about any type of Equipment leased hereunder, Lessor will provide Lessee with information about the functional operation of and specifications for each type of Equipment leased hereunder, and, if requested to do so, demonstrate such operation. It is Lessee's obligation to request such information and demonstration if it is not knowledgeable.

**c. Approved Driver or Technician Required for Cranes and Tractors.** For a mobile crane of Lessor, which has an internal combustion engine permitting it to drive on streets and highways, Lessee must use a driver trained to operate the mobile crane or tractor ,who shall be chosen from a list of drivers supplied to Lessee by Lessor at the time the order for such mobile crane is confirmed. For any other crane, or other arm, Lessee must use a technician to assemble and operate it who is qualified to do so under an industry-wide safety bulletin.

**d. Responsibility for Combining Equipment of Lessor with like Equipment of others.** Lessee acknowledges that the cranes, grip gear, lighting equipment, dollies, accessories and all pieces of equipment of Lessor are designed to work together with the equipment of Lessor. If Lessee combines any of the Equipment with equipment of others which is like the equipment of Lessor, Lessee assumes any and all risk of death, injury or damage to the extent caused by such combination or use of such other equipment, and releases Lessor from any responsibility therefore to the extent any death, injury or damage is caused by such combination or use of such other equipment.

**e. Equipment Must be used by Lessee in a Safe Manner.** Lessee shall use the Equipment as it was designed to function and shall not misuse it. Lessee must use the Equipment in a safe manner, with proper support, and in safe locations and environments, and comply with all safety instructions and manuals provided by Lessor, and applicable laws regulations, orders, ordinances, rules and safety bulletins.

**f. Costs of Delivery and Return and Cleaning Charge.** Lessee is responsible for selecting the mode of delivery of the Equipment and the return of the Equipment to Lessor's premises. All costs of delivery, return and transit insurance shall be borne by Lessee and if the Equipment is shipped by Lessor to Lessee, such shipment may be on a collect basis. Lessee shall pay a charge for cleaning the Equipment on its return.

**g. Risk of Loss to the Equipment.** Lessee shall bear the risk of loss for the Equipment commencing with its removal from Lessor's premises and continuing until its return to Lessor's premises. Risk of loss includes destruction, loss, confiscation, theft, taking or damage from any cause. If damage occurs, Lessee shall return to Lessor each piece of Equipment that has been

2

damaged and is responsible for repair by Lessor and Lessee shall pay to Lessor on demand the cost of such repair, or, if it is not so repairable or if it is lost to Lessor because of any such event, pay to Lessor on demand the replacement value as determined by Lessor of each such piece of Equipment, to the extent that Lessor has not been paid such replacement value by Lessee's insurer.   The rent for each such piece of Equipment shall be paid by Lessee to Lessor until whichever occurs first, (i) it is repaired by Lessor and Lessee has paid the cost of repair thereof to Lessor, (ii) it is recovered and returned to Lessor in the condition it is required to be maintained hereunder, or (iii) payment of such replacement value is received by Lessor, even though such rental payment extends beyond the Return Date.  Because of potential injuries and damage which may result from using such damaged and not repairable, or destroyed Equipment, it shall, upon Lessor's written request, be cut up into scrap metal by Lessee, with photographic evidence thereof delivered to Lessor, or returned to Lessor for scrapping.

h.  **Repairs.**  Lessee agrees to maintain the Equipment in good condition and repair during the term hereof, and the Equipment shall be returned to Lessor in such condition.  If Lessee is unable to so maintain the Equipment and requests Lessor, Lessor will service the Equipment, at the premises of Lessee, which is serviceable there by Lessor, and Lessee shall pay the cost thereof to Lessor on demand.  Lessee shall pay the costs, on return of the Equipment in Lessor's premises, of any repair of the Equipment required because it was not maintained by Lessee as required above and rent shall continue until any such repair is complete.   Any damaged equipment remains on rental until payment for repair or replacement occurs.

i.  **Plaques, Safety Instructions and Ownership.**  Lessee shall not deface, obliterate, remove, cover or obscure the plaques or safety instructions on the Equipment which show ownership of the Equipment or safety instructions.  Lessee shall do nothing to harm title or ownership of the Equipment, and lessee shall not dismantle, reverse engineer, copy, clone or duplicate the Equipment.

j.  **No Subleases or Assignment.**  Lessee shall not transfer or sublease the Equipment, or assign its interests in this Agreement to anyone.  Lessee agrees to retain the Equipment at all times in Lessee's exclusive possession and under its direct control and supervision.  This Agreement is personal to Lessee.

**3. Responsibilities and Liabilities of Lessee.**

a.  **Insurance Required.**   Lessee shall provide Lessor with such evidence of liability and fire and extended coverage insurance as Lessor shall request including, but not limited to, endorsements for unattended vehicles, political appropriation, damage and loss during transit, and automobile liability for mobile canes.   Such insurance shall be primary insurance and shall name Lessor, and anyone who has leased any of the Equipment to Lessor, as an additional insured and as a loss payee.  The obligation to provide such insurance, on the one hand, and the obligations under the indemnity in paragraph 3c below and under Risk of Loss in paragraph 2g above, on the other hand, are independent obligations, and none of them modified or affects the other.  Lessee shall provide workers' compensation insurance for its employees, including those described in paragraph 3d below.

b.  **Taxes.**  Lessee agrees to reimburse Lessor for any state or local personal property taxes which might be levied upon the Equipment or use of the Equipment while in the possession of Lessee. Lessee shall pay all applicable sales and use taxes.

3

**c. Notify Lessor about Injury, Death or Damage.**  In the event that the Equipment is involved in any way in damage to any property, including the Equipment or injury to any person or death of any person, Lessee shall, as soon as reasonably possible, notify Lessor by telephone and fax at the numbers set forth on the Work Order.  It is important that this notification be given promptly in order that Lessor may inspect, photograph and preserve the Equipment, investigate the facts and otherwise act responsibly.

**d. Employees of Party to this Agreement.**  Lessor and Lessee are the parties to this Agreement. Between the parties in this Agreement only, any person while on the payroll of and being paid by a party to this Agreement, or on the payroll of and being paid by such party's payroll company, is the employee of such party for all purposes hereunder, including, but not limited to, the indemnity in paragraph 3e below.

**Indemnity, Agreement to Provide Defense, Waiver and Release.**  LESSEE AGREES TO AND DOES HEREBY INDEMNIFY LESSOR, ITS AFFILIATES AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, LANDLORDS AND PATENT ASSIGNORS (HEREINAFTER CALLED "INDEMNITIES") FOR, AND HOLD THE INDEMNITIES HARMLESS FROM, AND LESSEE AGREES TO DEFEND THE INDEMNITIES AGAINST ANY AND ALL CLAIMS, SUITS, LIABILITY, EXPENSE, DAMAGE, PENALTIES, FINES AND OTHER SANCTIONS, CAUSE OF ACTION OR JUDGMENT, INCLUDING ATTORNEYS' FEES, RESULTING FROM INJURY TO OR DEATH SUSTAINED BY ANY PERSON OR PERSONS, INCLUDING, BUT NOT LIMITED TO, LESSEE, ANY CONTRACTORS OF LESSEE OR OTHER PERSONS OR ENTITIES WORKING ON THE PROJECT FOR WHICH THE EQUIPMENT IS LEASED, AND THEIR RESPECTIVE EMPLOYEES, OR DAMAGE TO PROPERTY OF ANY KIND, INCLUDING BUT NOT LIMITED TO THE EQUIPMENT WHICH INJURY, DEATH OR DAMAGE ARISES OUT OF OR IS IN ANY WAY CONNECTED WITH THIS AGREEMENT OR THE ASSEMBLY, USE, OPERATION, REPAIR, TRANSPORTATION, STORAGE OR POSSESSION OF THE EQUIPMENT BY ANYONE DURING THE TERM OF THIS AGREEMENT AND UNTIL THE EQUIPMENT IS RETURNED TO LESSOR'S PREMISES AS PROVIDED IN THE AGREEMENT, INCLUDING BUT NOT LIMITED TO, THE FAILURE OF LESSEE TO REPAIR, MAINTAIN, ASSEMBLE, TRANSPORT, STORE OR OPERATE THE EQUIPMENT AS REQUIRED HEREIN OR ANY OTHER BREACH OF THIS AGREEMENT BY LESSEE.   THIS INDEMNITY IS MEANT TO AND DOES INCLUDE ANY RIGHTS OF SUBROGATION BY LESSEE'S INSURERS AND ANY SUCH INJURY, DEATH OR DAMAGE ARISING FROM ANY CAUSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, UNDER THE DOCTRINE OF STRICT LIABILITY, ANY COMBINATION OR USE DESCRIBED IN PARAGRAPH 2d   ABOVE, ANY ALLEGED DEFECT IN THE MANUFACTURE, TESTING AND/OR DESIGN OF THE EQUIPMENT AND ANY ACTS OR OMISSIONS, OR NEGLIGENT CONDUCT OF THE INDEMNITIES, WHETHER ACTIVE OR PASSIVE ,EXCEPT THIS INDEMNITY SHALL NOT BE APPLICABLE WITH RESPECT TO ANY INDEMNITER, TO ANY INJURY, DEATH OR DAMAGE ARISING FROM THE SOLE NEGLIGENCE OF SUCH INDEMNITY, OR, WITH RESPECT TO MORE THAN ONE INDEMNITY, TO ANY INJURY, DEATH OR DAMAGE ARISING SOLELY FROM THE NEGLIGENCE OF SUCH INDEMNITIES, OR

4

ARISING SOLELY FROM A DEFECT IN THE MANUFACTURE, TESTING AND/OR DESIGN OF THE EQUIPMENT, WHETHER OR NOT SUCH EXCEPTION IS APPLICaBLE, LESSEE SHALL PROVIDE AND PAY THE COST OF THE DEFENSE, INCLUDING APPEAL, OF THE INDEMNITIES WITH COUNSEL OF LESSOR'S CHOICE, LESSEE WAIVES AND RELEASES THE INDEMNITIES FROM ANY EXISTING OR FUTURE CLAIMS, INCLUDING BUT NOT LIMITED TO ANY RIGHT OF SUBROGATION BY LESSEE'S INSURERS, IN ANY WAY CONNECTED WITH INJURY TO OR DEATH OR LESSEE'S AND ITS AFFILIATES, EMPLOYEES, LOSS OF OR DAMAGE TO LESSEE'S AND ITS AFFILIATES' PROPERTY, OR LOSS OF USE OF ANY PROPERTY, WHICH MAY ARISE OUT OF THE MATTERS THE INDEMNITIES  ARE INDEMNIFIED AGAINST ABOVE. THIS INDEMNITY IS EXPRESSLY MADE FOR THE BENEFIT OF AND MAY BE ENFORCED BY THE INDEMNITIES OR BY ANY OF THEM.

**4. Warranty Disclaimer & Waiver of Consequential Damages.**

a.    Warranty Disclaimer.__WITH RESPECT TO THE EQUIPMENT, LESSOR HAS NOT MADE AND SPECIFICALLY DISCLAIMS ANY EXPRESS REPRESENTATION OR WARRANTY, AND LESSOR HAS NOT MADE AND SPECIFICALLY DISCLAMS ANY IMPLIED REPRESENTATION OR WARRANTY REGARDING TITLE, MERCHANTABILITY, FITNESS FOR USE FOR A PARTICULAR PURPOSE, COURSE OF DEALING, OR USAGE OF TRADE.

b.    Reciprocal Waiver of Consequential Damages.     NEITHER LESSOR NOR LESSEE SHALL BE ENTITLED TO RECOVER, AND EACH HEREBY DISCLAIMS AND WAIVES ANY RIGHT THAT IT MAY OTHERWISE HAVE TO RECOVER, AGAINST THE OTHER, CONSEQUENTIAL DAMAGES (INCLUDING, BUT OT LIMITED TO, THOSE FOR LOSS OF SCREEN CREDITS, INTERRUPTION OF SHOOTING OR LOSS OF ASSETS, BUSINESS OR ANTICIPATED PROFITS) AS A RESULT OF (i) ANY BREACH OR ALLEGED BREACH BY THE OTHER OF THIS AGREEMENT, OR (ii) LEASING OR USING THE EQUIPMENT.

**5. Inspection by Lessor, Repossession and Reporting on Location of Equipment.**

During the term hereof, Lessor may, but it has no obligation whatsoever to do so hereunder, inspect the Equipment, enter upon any premises where the Equipment is being stored or used, and, if it is found that the Equipment is being misused or abused or if Lessee is in default under the Agreement repossess the Equipment or any piece thereof prior to the Return Date.  Lessee shall keep Lessor informed as to the exact location of the Equipment and all changes in location during the term of this Agreement.

**6. Termination by Lessor.**

If Lessee breaches this Agreement, Lessor may terminate this Agreement on twenty-four (24) hour notice to Lessee.  Such notice may be given to Lessee by mail, personal service, fax or telephone.  Upon such termination, Lessee shall forthwith return the Equipment to Lessor's premises, at Lessee's risk and expense, in the same condition it was in when first delivered to Lessee.

**7. Jurisdiction and Attorneys' Fees.**

THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, U.S.A. AND VENUE FOR ALL PURPOSES SHALL BE

5

PROPER ONLY IN THE COUNTY OF WESTCHESTER, STATE OF NEW YORK, U.S.A. In the event of any action or proceeding to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to receive or recover its reasonable attorneys' fees without regard to any court schedule on reasonable fees.

**8. Screen Credits.**

Screen Credit is to be listed as Camera Cranes, Grip Equipment, Lighting Equipment and/or Dollies provided by Key Grip Gear Inc.  Lessee is requested by Lessor to give screen credits for the use of its cranes, grip equipment, lighting equipment and/or dollies.

**9. Applicability in the Event of a Separate Lease.**

This Agreement shall not be applicable to Lessor and Lessee where a separate Lease for the Equipment, other than this Agreement, has been executed by them.

**10. Miscellaneous**

a. **Waiver.** The waiver by Lessor of any breach of this Agreement, or acceptance of rent, shall not constitute a waiver by Lessor of any subsequent or continuing breach.

b. **Entire Agreement and Amendment.**  With respect to the Equipment, this Agreement comprises and contains the entire agreement and understanding between Lessor and Lessee, and supersedes any prior warranties, representations and understandings.  It may not be amended or modified except in a writing signed by Lessor and Lessee.

c. **Severability.**  If any court finds any provision of this Agreement to be invalid or unenforceable, such provision shall be deemed modified, if feasible, to be valid or enforceable or, if not, it shall be stricken in such circumstance and all other provisions shall remain valid and enforceable.  It is not the intention of this Agreement to assert any claims or defenses which are prohibited by law.

d. **Headings.** The headings of the paragraphs herein are for convenience only and have no force and effect in the interpretation or construction of this Agreement.

e. **Survival of Obligations.**  Obligations hereunder, including, but not limited to, indemnification, payments and repairs, which relate in matters or events occurring prior to the expiration or termination of this Agreement or return of the Equipment, which are not discharged prior thereto, survive the expiration or termination of this Agreement.

by Key Grip Gear. 2011

6

Name   LAMONT   CRAWFORD

Signature   _Lamont Crawford_

Date   9 - 10 - 14

Signature constitutes a binding contract.

Between STARZ Productions and Arms Length Inc and Key Grip Gear
Terms and Conditions are listed on the back of this Work Order

6 of 6

## WORK ORDER

| | | |
|---|---|---|
| PRODUCTION | POWER | DEPT. GRIP |
| PROD. COMPANY | STARZ POWER PRODUCTIONS | DEPT. HEAD LAMONT CRAWFORD |

| ORDERED | ITEM | PULLED | SHORT |
|---|---|---|---|
| 12 | FULL APPLES | 12 | |
| 12 | ½ APPLES | 12 | |
| 12 | ¼ APPLES | 12 | |
| 12 | ¼ APPLES (PANCAKES) | 12 | |
| 12 | BASSO BLOCKS | 12 | |
| 12 | ½ BASSO BLOCKS | 12 | |
| 100 | SANDBAGS | 100 | |
| 40 | SHOTBAGS | 40 | |
| 2 | 2X3 CART | 2 | |
| 2 | 4X4 CART | 2 | |
| 1 | A-FRAME | 1 | |
| 2 | C-STAND CART | 2 | |
| 1 | DOLLY HAMPER | 1 | |
| 1 | DOORWAY DOLLY | 1 | |
| 1 | HAMPERS | 1 | |
| 1 | HANDTRUCKS | 1 | |
| 2 | MUSCLE CART | 2 | |
| 1 | SET CART | 1 | |
| 1 | WESTERN DOLLY | 1 | |
| 1 | DOT AND FINGER SET 18X24 | 1 | |
| 10 | OPEN 18X24 | 10 | |
| 8 | SOLID 18X24 | 8 | |
| 4 | SINGLE 18X24 | 4 | |
| 4 | DOUBLE 18X24 | 4 | |
| 2 | SILK 18X24 | 2 | |
| 2 | ¼ SILK 18X24 | 2 | |
| 1 | CHINA SILK 18X24 | 1 | |
| | BLACK SILK 18X24 | | |
| | ¼ BLACK SILK 18X24 | | |
| 12 | OPEN 24X36 | 12 | |
| 8 | SOLID 24X36 | 8 | |
| 4 | SINGLE 24X36 | 4 | |
| 4 | DOUBLE 24X36 | 4 | |
| 2 | SILK 24X36 | 2 | |
| 2 | ¼ SILK 24X36 | 2 | |
| 2 | CHINA SILK 24X36 | 2 | |
| | BLACK SILK 24X36 | | |
| | ¼ BLACK SILK 24X36 | | |
| 2 | METAL 24X36 | 2 | |

INITIALS _Lc_

1 of 6

| ORDERED | ITEM | PULLED | SHORT |
|---|---|---|---|
| 2 | CELLO COOKIE 24X36 | 2 | |
| 2 | TRIPLE 24X36 | 2 | |
| 10 | COMBI HEADS | 10 | |
| 12 | EAR EXTENSIONS 12K | 12 | |
| 4 | GRIP HELPERS | 4 | |
| 16 | LONG ARMS | 16 | |
| 2 | MAJIC ARMS | 2 | |
| 4 | MENACE ARMS | 4 | |
| 12 | PIPE SPREADERS | 12 | |
| 24 | PRO BURGERS FIXED | 24 | |
| 24 | PRO BURGERS SWIVEL | 24 | |
| 3 | POLECAT-SMALL | 3 | |
| 3 | POLECAT-MEDIUM | 3 | |
| 3 | POLECAT-LARGE | 3 | |
| 4 | PIPE CONNECTORS | 4 | |
| 12 | PULLIES | 12 | |
| 16 | SHORT ARMS | 16 | |
| 12 | SOUND BLANKETS | 12 | |
| 2 | TREE BRANCH HOLDER | 2 | |
| 1 | TREE MOUNT 2K | 1 | |
| 2 | PUTTY KNIFE 750 | 2 | |
| 10 | TRUSS MAKERS | 10 | |
| 48 | SPRING CLIPS-SMALL | 48 | |
| 48 | SPRING CLIPS-MEDIUM | 48 | |
| 24 | SPRING CLIPS-LARGE | 24 | |
| 2 | UMBRELLA | 2 | |
| 2 | E-Z UP | 2 | |
| 2 | 4 STEP LADDER | 2 | |
| 2 | 6 STEP LADDER | 2 | |
| 2 | 8 STEP LADDER | 2 | |
| 1 | 10 STEP LADDER | 1 | |
| 1 | 12 STEP LADDER | 1 | |
| 1 | EXTENSION LADDER | 1 | |
| 10 | BLACK 20' PIPE | 10 | |
| 2 | BLACK 18' PIPE | 2 | |
| 2 | BLACK 14' PIPE | 2 | |
| 2 | BLACK 12' PIPE | 2 | |
| 2 | BLACK 10' PIPE | 2 | |
| 16 | SPEEDRAIL 20' | 16 | |
| | SPEEDRAIL 18' | | |
| | SPEEDRAIL 14' | | |
| 4 | SPEEDRAIL 12' | 4 | |
| 4 | SPEEDRAIL 10' | 4 | |
| 1 | PIPE ORGAN BOX | 1 | |
| 3 | SOLID 6X6 RAG | 3 | |
| 2 | SINGLE 6X6 RAG | 2 | |
| 2 | DOUBLE 6X6 RAG | 2 | |
| 1 | EGG CRATE 6X6 RAG | 1 | |
| 2 | SILK 6X6 RAG | 2 | |

INITIALS _LC_

2 of 6

| ORDERED | ITEM | PULLED | SHORT |
|---|---|---|---|
| 1 | ¼ SILK 6X6 RAG | 1 | |
| 2 | BLEACHED 6X6 RAG | 2 | |
| 2 | UNBLEACHED 6X6 RAG | 2 | |
| 2 | GRID 6X6 RAG | 2 | |
| 2 | LIGHT GRID 6X6 RAG | 2 | |
| 2 | ¼ GRID 6X6 RAG | 2 | |
| 2 | ½ SOFT FROST 6X6 RAG | 2 | |
| 2 | CLAYCOAT 6X6 | 2 | |
| 1 | CHINA SILK 6X6 | 1 | |
| | SILVER LAME 6X6 RAG | | |
| | GOLD LAME 6X6 RAG | | |
| 3 | SOLID 8X8 RAG | 3 | |
| 2 | SINGLE 8X8 RAG | 2 | |
| 2 | DOUBLE 8X8 RAG | 2 | |
| 1 | EGGCRATE 8X8 RAG | 1 | |
| 2 | SILK 8X8 RAG | 2 | |
| 1 | ¼ SILK 8X8 RAG | 1 | |
| 2 | BLEACHED 8X8 RAG | 2 | |
| 2 | UNBLEACHED 8X8 RAG | 2 | |
| 2 | GRID 8X8 RAG | 2 | |
| 2 | LIGHT GRID 8X8 RAG | 2 | |
| 2 | ¼ GRID 8X8 RAG | 2 | |
| 1 | ½ SOFT FROST 8X8 RAG | 1 | |
| 2 | CLAYCOAT 8X8 RAG | 2 | |
| 1 | CHINA SILK 8X8 RAG | 1 | |
| | SILVER LAME 8X8 RAG | | |
| | GOLD LAME 8X8 RAG | | |
| 3 | SOLID 12X12 RAG | 3 | |
| 2 | SINGLE 12X12 RAG | 2 | |
| 2 | DOUBLE 12X12 RAG | 2 | |
| 1 | EGG CRATE 12X12 RAG | 1 | |
| 2 | SILK 12X12 RAG | 2 | |
| 1 | ¼ SILK 12X12 RAG | 1 | |
| 2 | BLEACHED 12X12 RAG | 2 | |
| 2 | UNBLEACHED 12X12 RAG | 2 | |
| 2 | GRID 12X12 RAG | 2 | |
| 2 | LIGHT GRID 12X12 RAG | 2 | |
| 2 | ¼ GRID 12X12 RAG | 2 | |
| 2 | ½ SOFT FROST 12X12 RAG | 2 | |
| 2 | CLAYCOAT 12X12 RAG | 2 | |
| 2 | CHINA SILK 12X12 RAG | 2 | |
| 1 | SILVER LAME 12X12 RAG | 1 | |
| 1 | GOLD LAME 12X12 RAG | 1 | |
| 1 | CHECKERBOARD 12X12 RAG | 1 | |
| | BLACK SILK 12X12 RAG | | |
| | ¼ BLACK SILK 12X12 RAG | | |
| 2 | UNDERWATER BLACK 12X12 RAG | 2 | |
| 2 | SOLID 12X20 | 2 | |
| 1 | SINGLE 12X20 RAG | e | |

INITIALS _LC_

3 of 6

| ORDERED | ITEM | PULLED | SHORT |
|---|---|---|---|
| 1 | DOUBLE 12X20 RAG | 1 | |
| | EGG CRATE 12X20 RAG | | |
| | SILK 12X20 RAG | | |
| | ¼ SILK 12X20 RAG | | |
| | BLEACHED 12X20 RAG | | |
| | UNBLEACHED 12X20 RAG | | |
| 1 | GRID 12X20 RAG | 1 | |
| 1 | LIGHT GRID 12X20 RAG | 1 | |
| 1 | ¼ GRID 12X20 RAG | 1 | |
| | ½ SOFT FROST 12X20RAG | | |
| 1 | CLAYCOAT 12X20 RAG | 1 | |
| | CHINA SILK 12X20 RAG | | |
| | SILVER LAME 12X20 RAG | | |
| | GOLD LAME 12X20 RAG | | |
| | CHECKERBOARD 12X20 RAG | | |
| | BLACK SILK 12X20 RAG | | |
| | ¼ BLACK SILK 12X20 RAG | | |
| | UNDERWATER BLACK 12X20 RAG | | |
| 4 | SOLID 20X20 RAG | 4 | |
| 2 | SINGLE 20X20 RAG | 2 | |
| 2 | DOUBLE 20X20 RAG | 2 | |
| | EGG CRATE 20X20 RAG | | |
| 2 | SILK 20X20 RAG | 2 | |
| | ¼ SILK 20X20 RAG | | |
| 2 | BLEACHED 20X20 RAG | 2 | |
| 2 | UNBLEACHED 20X20 RAG | 2 | |
| 2 | GRID 20X20 RAG | 2 | |
| 2 | LIGHT GRID 20X20 RAG | 2 | |
| 2 | ¼ GRID 20X20 RAG | 2 | |
| 1 | ½ SOFT FROST 20X20RAG | 1 | |
| 2 | CLAYCOAT 20X20 RAG | 2 | |
| | CHINA SILK 20X20 RAG | | |
| | SILVER LAME 20X20 RAG | | |
| | GOLD LAME 20X20 RAG | | |
| | CHECKERBOARD 20X20 RAG | | |
| | BLACK SILK 20X20 RAG | | |
| | ¼ BLACK SILK 20X20 RAG | | |
| 2 | UNDERWATER BLACK 20X20 RAG | 2 | |
| 1 | CAMO NET 20X20 RAG | 1 | |
| 2 | SECTIONS | 2 | |
| 2 | TOPS | 2 | |
| 8 | LEVELERS | 8 | |
| 8 | WHEELS | 8 | |
| 8 | FEET | 8 | |
| 4 | SAFETY RAILS | 4 | |
| 40 | C-STANDS 40" | 40 | |
| 6 | C-STANDS 20" WIDE | 6 | |
| 4 | C-STANDS 20" NARROW | 4 | |
| 2 | UMBRELLA STAND | 2 | |

INITIALS

| ORDERED | ITEM | PULLED | SHORT |
|---------|------|--------|-------|
| 12 | COMBI STANDS | 12 | |
| 12 | MOMBO COMBO | 12 | |
| 2 | HI BOY | 2 | |
| 4 | LOW BOY | 4 | |
| 1 | STARTER ISIAH TRACK | 1 | |
| 1 | 2' ISIAH TRACK | 1 | |
| 1 | 4' ISIAH TRACK | 1 | |
| 5 | 8' ISIAH TRACK | 5 | |
| 5 | 10' ISIAH TRACK | 5 | |
| | 45 DEGREE CURVE | | |
| | 90 DEGREE CURVE | | |
| 1 | fisher 10 dolly complete | 1 | |
| 1 | fisher 11 dolly complete | 1 | |
| 1 | 2001 mack tractor | 1 | |
| 1 | 1992 freightliner trailer | 1 | |

INITIALS _LC_

Name _LAMONT   CRAWFORD_____

Signature _Lamont Croff_____

Date _9 - 10 - 14_____

Signature constitutes a binding contract.

Between STARZ Productions AND Arms Length Inc AND Key Grip Gene

Terms and Conditions are listed on the back of this Work Order

6 of 6